CITY OF ASHLAND, Kentucky, a municipal corporation, Appellant,

v.

J. Fred MILLER, Coroner of Boyd County, Appellee.

Court of Appeals of Kentucky.

Jan. 28, 1955.

Rehearing Denied Nov. 18, 1955.

A. W. Mann and Arthur T. Bryson, Jr., Ashland, for appellant.

Thomas Burchett, Ashland, for appellee.

CULLEN, Commissioner.

The City of Ashland brought action against J. Fred Miller, Coroner of Boyd County, seeking a declaration as to the right of the coroner to collect fees from the city for holding inquests in certain specified cases. The court entered judgment holding that the coroner was entitled to collect a fee in each of the cases. The amount involved is $936, and the city has moved for an appeal.

Under KRS 64.180, when an inquest is held over an unburied body in a city containing a population of over 30,000, the coroner's fee of $12 for holding the inquest is to be paid by the city if the estate of the deceased is not sufficient to pay it. Ashland has a population of over 30,000.

The circumstances in which the coroner is to hold an inquest are stated in KRS 72.030. The city maintains that the coroner was not required nor entitled to hold inquests in the cases involved in this action, and therefore the city is not obligated for the inquest fees. It is the contention of the city that the coroner is not entitled to hold an inquest upon the mere request of a responsible citizen, without there being any indication that the death was the result of crime, violence, or other unnatural cause.

The answer to the question in issue depends upon the construction of KRS 72.030, which we quote:

"The coroner, upon request by any responsible citizen or if he has reason to believe the death of a human being within his county was caused by crime, suicide, drowning or other sudden cause, or resulted from unnatural cause without the attendance of a physician, shall investigate the death and hold an inquest over the body. If death results from violence or accident within ninety days from onset the coroner shall hold an inquest the same as if death occurred immediately."

It will be observed that the statute is susceptible of the construction that an inquest may be held either (1) upon the mere request of a responsible citizen, or (2) when the coroner has reason to believe the death was caused by crime, suicide, drowning or other sudden cause, or resulted from unnatural cause without the attendance of a physician. The city maintains that this construction is not correct, and that the statute contemplates that the request of a citizen must carry with it some suggestion or indication that the death was caused by crime, etc., so as to furnish some basis for belief by the coroner that the death warrants investigation.

In endeavoring to reach a correct interpretation of KRS 72.030, we think it is proper to consider some of the other statutes relating to the office of coroner. We find, in KRS 72.020, that the duty of a person to notify the coroner of a death arises only where the dead person was "slain, drowned or otherwise suddenly killed," or the death resulted from unnatural cause without the attendance of a physician. We also observe, in KRS 213.090, that when a death occurs without a physician in attendance, the registrar of vital statistics is required to notify the coroner only if "the circumstances of the case render it probable that the death was caused by unlawful or suspicious means". From these statutes we gain the impression that the legislature had in mind that the coroner should be called in only where the circumstances indicate that the death might be from other than natural causes.

Historically, the function of the coroner always has been to aid in the administration of criminal justice by inquiring into the circumstances of violent or suspicious deaths, and the object of an inquest has been to obtain information as to whether death was caused by some criminal act. 13 Am.Jur., Coroners, sec. 2, p. 106, sec. 6, p. 108.

When we consider the related statutes, and the historical background of the office of coroner, we are convinced that KRS 72.030, in referring to a request of a responsible citizen, means a request that is accompanied by some indication of belief that the death was other than a natural one. Any other construction would open the door to abuse of the power of the coroner, and perversion of the traditional functions of the office.

The number of inquests in which the City of Ashland has refused to pay the inquest fee is 43. The circumstances of each of these inquests is stated in evidence by the coroner. Twenty-nine of the deaths were from "heart attack" or "coronary occlusion"; two were from cerebral hemorrhage; two from pneumonia; one from malnutrition; and nine from "natural causes". Twenty-four of the deaths occurred at home; others in such places as a train, a store, a barber shop, a hotel or motel, or a hospital.

In only two of the deaths (those of Walter Fannin and Jess Stamper) was there any suggestion that the circumstances of the death were peculiar or suspicious. In these two cases we think the coroner was justified in holding an inquest and is entitled to his fee. In the other 41 cases no one even intimated that there was any reason to suspect crime, violence or other unnatural cause of death, and it appears that the coroner was called in only because his signature on the death certificate was desired. We cannot believe that the statute was intended to provide a fee of $12 to the coroner for merely signing a death certificate.

The motion for an appeal is sustained, and the judgment is reversed, with directions to enter judgment denying a fee to the coroner in all of the 43 inquests in dispute except those of Walter Fannin and Jess Stamper.